UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JOHN K PATTEE,

      Plaintiff,

      v.                       Case No. 3:19-CV-162 JD

NEXUS RVS LLC,

      Defendant.

**OPINION AND ORDER**

John Pattee bought a recreational vehicle from the manufacturer Nexus RVs, LLC ("Nexus"). The purchase included a written limited warranty. Ever since he took delivery, Mr. Pattee's RV has been afflicted by various maintenance issues which have resulted in four visits to repairs shops within the first year of ownership and numerous days when Mr. Pattee could not use his RV. After several unsuccessful attempts to resolve these issues, Mr. Pattee sued Nexus. In his suit, Mr. Pattee alleges Nexus breached the express and implied warranties, engaged in intentional and negligent misrepresentation amounting to fraud, and owes restitution for the cost of the RV under the equitable theory of unjust enrichment.

Nexus has now filed a motion for summary judgment on all the claims brought by Mr. Pattee (DE 71). For the following reasons, the Court will partially grant and partially deny the motion.

### A. Factual Background

On September 6, 2017, Mr. Pattee purchased a 2018 Phantom 35SC recreational vehicle ("the RV") from Nexus for the price of $142,717 plus document fees, taxes, and interest (DE 77-

14 at 25:22–25; DE 77-3; DE 77-4). As part of that agreement, Nexus supplied a one-year limited warranty covering certain portions of the RV (DE 77-5; DE 77-6). Almost immediately after leaving the Nexus facility with his new RV, Mr. Pattee began to notice problems with the RV, including a water leak which flooded the bedroom during a trip to Wisconsin with his girlfriend (DE 77-14 at 82:21–83:24). Mr. Pattee also noticed the RV was making noise which appeared to be emanating from the living room slide out unit ("slide out" or "slide room")[1] and that there was daylight visible at the joints between the RV and the slide out (DE 77-14 at 67:1–7, 89:15–23).

After returning to his home in Florida with the RV, Mr. Pattee followed the Nexus warranty procedure and took the RV to Southern Komfort RV Services, a Nexus authorized dealer, for repairs (DE 77-14 at 87:1–21). Mr. Pattee identified two defects at Southern Komfort for repair, the water leak and the living room slide out seemingly being out of alignment (DE 77-14 at 88:3–12, 92:7–16). The RV was at Southern Komfort for four days, from September 15, 2017, until September 18, 2017 (DE 77-14 at 96:15–97:7; DE 77-7). Southern Komfort indicated they had resolved the issues when they returned the RV to Mr. Pattee (DE 77-14 at 94:8–95:9).

After retrieving his RV from Southern Komfort, Mr. Pattee and his girlfriend drove it to a NASCAR race in Talladega, Alabama (DE 77-14 at 100:4–23). While driving to Talladega they noticed the slide out began making noise again and seemed to be moving while they were driving down the road (DE 77-14 at 102:6–103:15). The movement was up and down and side to side, about an inch in each direction (DE 77-14 at 103:8–15). They noticed further problems over the

---

[1] A slide out room is an extendable room which extends from the hull of an RV to increase the interior space when the RV is stationary.

course of their four day stay in Talladega including the bedroom water leak recurring and the outdoor entertainment system radio not working (DE 77-14 at 105:24–106:4, 109:3–12).

Upon returning to Florida, Mr. Pattee had difficulty finding another authorized dealer to perform repairs and contacted Nexus' Service Department (DE 77-14 at 111:18–23). Nexus agreed to repair the slide out and the water leak at its factory in Indiana (DE 77-14 at 115:2–7, 116:6–17). Prior to driving to Indiana, Mr. Pattee inspected his RV and created a list of eleven total defects for repair and emailed it to his contact at the Nexus Service Department (DE 77-14 117:1–119:5, 120:2–7).  The full list of issues Mr. Pattee presented to Nexus before or during this repair visit is as follows: living room slide out movement and noise, water leaks under the bed, outside radio inoperative, front end pulls to the right, missing screws and fasteners through the RV, entry door screws are broken off, basement compartment fills with water, the gutter is misaligned, wall panel fell off, rear air conditioner not cooling, and decals were peeling off the RV exterior (DE 77-15 ¶ 9). The RV was at the Nexus factory for at most ten days beginning around October 17, 2017, until October 27, 2017.[2] At the conclusion of this visit Ms. Connie Spratt, a Nexus RV Technician, spoke to Mr. Pattee and told him that Nexus had corrected all of the problems with his RV (DE 77-14 at 126:4–9).

After departing the Nexus facility Mr. Pattee returned to Florida and did not use his RV again until January 2018 (DE 77-14 at 137:22–138:19). In January 2018, Mr. Pattee took his RV on a trip with friends to watch a college basketball game and noticed the squeaking noise and

---

[2] The Court notes the record contains contradictory information and claims about this duration. Mr. Pattee's Complaint indicates he agreed to return the RV to the Nexus facility on October 17 and departed from the facility after repairs were complete on October 27 (DE 1 ¶¶ 18, 21). However, his Statement of Genuine Disputes and his deposition indicate the trip was only four days at most (DE 77 at 7; DE 77-14 at 121:21–24, 123:19–124:3). Nexus' work order indicates the RV entered its shop on October 18 (DE 77-9). The Court, for purposes of this motion, will consider this visit to be ten days, as that duration is consistent with Mr. Pattee's claims regarding the total number of days his RV was "out of service" and is most favorable to his claims for breach of warranty (DE 76 at 3).

slide room movement were happening again (DE 77-14 at 139:4–140:8). Mr. Pattee then contacted Nexus and asked if he could take the RV to be serviced at Open Road RV, a repair shop near his home in Florida which was not a Nexus authorized dealer partner (DE 77-14 at 141:13–18, 142:20–143:20). Nexus ultimately agreed to pay for the repair of the slide out at Open Road under warranty (DE 77-14 at 143:2–20). At this point, Mr. Pattee had concluded, based in part on his review of technical documents from the slide room manufacturer, he could not safely use the slide out without repair as it might slide out of the RV without warning (DE 77-14 at 149:9–151:3).

Mr. Pattee took his RV to Open Road on January 30, 2018, and it remained there until April 13, 2018, a total of 73 days (DE 77-14 at 147:15–18, 158:5–159:1; DE 77-9). The first 21 days were spent repairing the slide out and its mechanism (DE 77-12 at 3). Open Road repaired and replaced the slide room's operating mechanism as it had been destroyed by the movement of the slide room (DE 77-14 at 148:13–17, 156:1–157:9). While performing repairs on the slide room mechanism, mechanics discovered the roof fabric on the slide room was torn and Nexus ultimately agreed to also pay for that repair under warranty as well (DE 77-14 at 152:5–8, 152:24–153:10). The repair of the roof fabric was completed over a period of 52 days (DE 77-14 at 158:5–159:1). Open Road completed these repairs, told Mr. Pattee they had corrected the problems with the RV and then returned it to him (DE 77-14 at 158:9–159:1).

Later in April 2018, Mr. Pattee took the RV with friends to Talladega, Alabama for another NASCAR race (DE 77-14 at 160:6–161:9). During the drive to Talladega, Mr. Pattee noticed the slide out was once again moving and making a squeaking noise while the RV was driving (DE 77-14 at 162:25–163:10, 166:10–17). While in Talladega two other problems recurred, the bedroom flooded again, and the troublesome wall panel fell off again (DE 77-14 at

162:7–19). Mr. Pattee contacted Nexus and told them of the issues with the slide out and bedroom flooding, that he intended to pursue his rights under Florida's lemon law, and that he wanted his money back for the unit (DE 77-14 at 166:10–167:1).

On May 4, 2018, Mr. Pattee sent a Florida lemon law notice to Nexus (DE 77-14 at 169:1–7; DE 77-10). When Nexus received this notice, it contacted Mr. Pattee and asked for another chance to repair the RV at its Indiana facility (DE 77-14 at 171:12–14). Mr. Pattee agreed, and Nexus sent a transporter to take the RV to Indiana (DE 77-14 at 171:15–17).

The RV spent another 35 days at Nexus' facility, from May 16, 2018, until June 19, 2018 (DE 77-14 at 174:13–175:3). There it was repaired for the following defects: slide out room movement, the water leak under the bed, water damage to flooring in the bedroom and hallway, the wall panel falling off, roof repair (hole from satellite dish), decals peeling off, rear air conditioning not cooling, and the screen door handle being loose (DE 77-14 at 174:13–175:9; DE 77-10). The repairs to the slide room included once again replacing the mechanisms which had been destroyed by slide room movement and adding additional rollers to help support the weight of the slide room and prevent future destruction of the mechanism (DE 77-14 at 173:2–174:3). After completing the repairs, Nexus explained to Mr. Pattee the work they had done and indicated all of the issues were fixed (DE 77-14 at 176:25–177:20).

After picking up the RV from the Nexus facility for the second time, Mr. Pattee and his girlfriend began taking a trip to New York when they noticed the same squeaking noise and slide room movement while they were driving (DE 77-14 at 182:22–183:6). Additionally, Mr. Pattee noticed that the hot water heater would not work on electric (DE 77-14 at 184:22–24). Mr. Pattee did not use the slide out on this trip because he feared the mechanism would be damaged from the movement and he would not be able to retract it once deployed (DE 77-14 at 185:2–19).

Mr. Pattee then contacted Nexus again to report these problems (DE 77-14 at 186:3–12). Nexus discussed potentially bringing the RV to another facility for repair, but Mr. Pattee declined and indicated he believed the RV was "fatally flawed" and that he was going to pursue legal remedies to seek relief (DE 77-14 at 186:6–24; DE 77-12 at 21–24). Mr. Pattee subsequently filed this suit against Nexus.

The relevant procedural history of this case is that on September 28, 2018, Mr. Pattee filed this lawsuit, via a complaint containing seven counts, in the United States District Court for the Northern District of Florida (DE 1). The case was then transferred to this Court on March 6, 2019 (DE 19).

### B. Preliminary Matters and Motions

Prior to analyzing the merits of the motion for summary judgment, the Court will resolve several preliminary motions filed by the parties. The parties have filed a stipulation as to the choice of law and have also filed three motions to strike. Mr. Pattee filed a motion to strike a portion of the declaration of Mr. Claude Donati (DE 79). Nexus has filed two motions to strike. One motion is to strike portions of the declaration and associated report of Mr. Dennis Bailey, Mr. Pattee's expert witness (DE 84). The other motion is to strike portions of Mr. Pattee's declaration (DE 83). The Court acknowledges the stipulation regarding the choice of law. The motion to strike portions of Claude Donati's declaration will be denied as moot, the motion to strike portions of Mr. Pattee's declaration will be granted in part and denied in part, and the motion to strike portions of Mr. Bailey's declaration and report will be denied in part on the merits and denied in part as moot.

### *(1) The parties stipulate that Indiana law governs this case*

The Court acknowledges that the parties have jointly stipulated that Indiana law governs the claims in this matter (DE 70).

### *(2) The motion to strike portions of Claude Donati's declaration is denied as moot*

Mr. Pattee filed a motion to strike paragraphs 3 and 4 of the declaration of Nexus Managing Member Claude Donati (DE 79). As the Court did not need to consider these disputed portions of Mr. Donati's declaration in reaching its decision on the motion for summary judgment, the motion to strike will be denied as moot.

### *(3) The motion to strike portions of Mr. Pattee's declaration is granted in part and denied in part*

Nexus filed a motion to strike portions of Mr. Pattee's declaration (DE 83). Specifically, Nexus argues that paragraphs 7, 11, 18, 21, and 23 through 29 should be stricken as they contain inadmissible opinion evidence. Nexus separately argues that paragraphs 7, 9, 12, 16, and 20 should be stricken as Mr. Pattee lacks personal knowledge of the facts stated therein which makes those sections inadmissible pursuant to Federal Rule of Civil Procedure 56(c). The motion is granted for paragraph 21 and is denied for the other paragraphs.

### *(a) Nexus' Rule 56(c) challenges will fail*

Federal Rule of Civil Procedure 56(c)(4) requires that an affidavit or declaration used to support or oppose a motion for summary judgment be made on personal knowledge.

Nexus argues that paragraphs 7, 9, 12, 16, and 20 are inadmissible as Mr. Pattee does not have personal knowledge of the number of days his RV was out of service. Briefly summarized, paragraphs 7, 9, 12, and 16, indicate the number of days Mr. Pattee's RV was at a given repair shop and the problems which were addressed on that visit, while paragraph 20 summarizes the total number of days the RV was in repair shops and lists all the problems addressed (DE 77-15 ¶¶ 7, 9, 12, 16, 20). Mr. Pattee's calculation of this number is simply the number of days the RV was out of his possession and in the repair shop. Nexus argues this is wrong as the "out of service" time should only count hours the RV was being actively worked on. Therefore because Mr. Pattee does not know that amount of time, he has no personal knowledge of how long the RV was out of service. In effect, Nexus argues that because Mr. Pattee's calculation is legally incorrect he therefore lacks personal knowledge of his RV's location for those periods of time.

As an initial matter, the Court will note that only paragraph 20 actually uses the phrase "out of service" (DE 77-15 ¶ 20). This would seemingly render Nexus' argument moot regarding the other paragraphs, which only state the RV was at a given repair shop for a certain period of time. However, the Court does not need to advance to such granular analysis as Nexus' argument is only a legal argument against how to interpret the facts presented in the declaration and not a serious allegation that Mr. Pattee lacked personal knowledge of the fact his RV was out of his possession and in repair shops at the given times.

The Court notes that the phrase "out of service" is a legal term of art in warranty cases. Nexus, however, does not argue Mr. Pattee was presenting a legal conclusion by using it in paragraph 20 as opposed to potentially using the term in a more colloquial sense without understanding its legal significance. In either case, the Court will disregard any apparent legal conclusions in the paragraph and independently apply the law to the underlying facts. *See Pfeil v.*

*Rogers*, 757 F.2d 850, 862 (7th Cir. 1985); *see also Paniaguas v. Aldon Cos. Inc.*, 2006 WL 2568210, *4 (N.D. Ind. Sept. 5, 2006) (when considering a motion to strike portions of an affidavit in support of a motion for summary judgment, courts will only strike and disregard the improper portions of the affidavit and allow all appropriate recitations of fact to stand).

Accordingly, Nexus has not established paragraphs 7, 9, 12, 16, and 20 are inadmissible under Rule 56 and the motion on that basis will be denied.

*(b) Nexus' motion to strike paragraph 12 will be denied*

Additionally, Nexus argues that paragraph 12[3] of Mr. Pattee's declaration should be stricken as it is inconsistent with his deposition. Specifically, that Mr. Pattee said in paragraph 12 his RV was "out of service" for 73 days but in his deposition, he says the amount of time work was being performed was six and a half hours. The Court notes that paragraph 12 does not use the phrase "out of service." To the extent the time discussed in paragraph 12 is used to reach a legal conclusion elsewhere in the declaration, the Court disregards the legal conclusion and only considers the underlying facts. Further, the Court does not discern an inconsistency between a statement that the RV was in possession of a repair shop for 73 days and a separate statement that the number of hours worked on it while in possession was six and a half.

---

[3] Nexus' motion indicates paragraph 9, but a footnote in its reply brief indicates that was an error and it meant paragraph 12 (DE 93 at 6 n.1). The Court reminds counsel to exercise care in citation, particularly when making a claim of inconsistency between two items in the record.

   *(c) Nexus' motion to strike Mr. Pattee's alleged opinions is waived as*
*undeveloped except for paragraph 21 which is granted.*

   Nexus argues that paragraphs 7, 11, 18, 20, 21, and 23 through 29 are inadmissible as they constitute opinion evidence and Mr. Pattee lacks the qualifications to provide opinions involving the technical, mechanical, and functional capabilities for the RV. Either as expert opinion under Federal Rule of Evidence 702 or as a lay witness opinion under Rule 701. Mr. Pattee makes four arguments in response: (1) Nexus waived this argument as underdeveloped, (2) Nexus opened the door to this evidence by using the same research and conclusions in its memorandum supporting summary judgment, (3) paragraphs 20, 24, 25 and, 29 contain no opinions, and (4) the paragraphs containing opinion are admissible under Rule 701 as lay witness opinion. At no point does Mr. Pattee argue he would qualify as an expert under Rule 702.

   The Court begins by assessing whether Nexus' arguments are in fact underdeveloped to the point they are waived. Mr. Pattee argues that Nexus fails to identify specific language in the challenged paragraphs which it seeks to strike and only generally argues he lacks the requisite qualifications to provide expert opinions. In doing so, Mr. Pattee references *Castagna v. Newmar Corporation*, a case previously before this Court where a motion to strike was found waived as underdeveloped when the counsel's argument section was so conclusory it often forwent using grammar. 340 F.Supp.3d 728, 733–35 (N.D. Ind. 2018).  Nexus' response is that its argument is clearly distinguishable from *Castagna* given Nexus "provided the legal basis for admitting expert testimony and referred the Court to various statements made by Pattee which failed to meet the foundational requirements for expert testimony" (DE 93 at 2). Nexus also argues that because it points to specific paragraphs, it has sufficiently identified the language to be stricken.

The Court notes that Nexus' arguments are not as deficient as those in *Castagna* but nonetheless concludes they are undeveloped and waived except those regarding paragraph 21. In short, submitting a recitation of the black letter law on opinion testimony, along with a list of the paragraphs which the party would like stricken, and a minimal assertion that those paragraphs run afoul of the aforementioned law does not constitute legal analysis.

The disputed paragraphs are often long and contain a mix of what appears to be factual recitation and what could be opinion.  Nexus' argument as to why these specific paragraphs contain inadmissible opinions is best described as conclusive and generic. Nexus' motion states in one sentence "Pattee's opinions, set forth in paragraphs 7, 11, 18, 20, 21, and 23 through 29 of the Declaration, all involve the technical, mechanical and functional capabilities of the subject RV" (DE 83 at 2). That is the extent of their discussion of why those paragraphs are opinion evidence.

The Court's review of this motion is undoubtedly frustrated by Nexus' lack of precision. To illustrate this dilemma, consider paragraph 24:

> After the June 2018 repairs, on our way to New York, the slide room again detached and began to move side to side and up and down while driving down the road. While camped at our destination, we did not operate the slide outs for fear that the slide movement had again destroyed the slide components and the slide would not retract completely if extended, or that we would damage the slide components further. This also caused use of the living space to be seriously compromised. The amount of available living space is significantly reduced with the slide room retracted. The refrigerator doors cannot be fully opened. The fold out sofa cannot be extended. Access to drawers requires one to step sideways to open the drawers. Two people cannot pass by each other in the walkway. One person must retreat to one end of the coach or the other to create sufficient space for another person to transit the walkway. The entire point of installing a slide room is to provide the occupants with usable living space. The inability to trust our slide to properly operate rendered moot the entire point of having the slide room system. And, subsequent to the June 2018 trip to the Nexus factory for the fourth and final repair attempt, I ceased operating the living room slide out for fear it would not be able to retract it. Additionally, when the slide out is out of alignment, this allows for water and other environmental intrusion;

DE 77-15 ¶ 24.

Nexus would have the Court strike this entire paragraph. But it would facially appear to mostly consist of Mr. Pattee describing his firsthand experience of driving the RV to New York, and the practical limitations he experienced with the slide room being closed. It is unclear to the Court if Nexus views this entire paragraph as opinion to be struck, or if just a portion, what the extent of that portion is.

Nexus' motion provides almost no individual analysis as to why any given paragraph constitutes opinion evidence. It is manifestly not the Court's responsibility to research and conduct the parties' arguments. *Draper v. Martin*, 664 F.3d 1110, 1114 (7th Cir. 2011) (internal citation omitted).  Further, Seventh Circuit precedent clearly establishes that arguments which are perfunctory or underdeveloped are waived. *Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016). Accordingly, the Court finds the motion to strike paragraphs 7, 11, 18, 20, and 23 through 29 is waived as underdeveloped.

The Court will, however, analyze paragraph 21 as Nexus expressly indicates it is challenging Mr. Pattee's opinion on the value of the RV (DE 83 at 3). Nexus argues that Mr. Pattee is not qualified to provide a valuation for his RV as he is not qualified as an expert and his reasoning lacks sufficient factual basis to give an opinion as the RV's owner. This argument directly implicates paragraph 21 which includes Mr. Pattee stating it is his opinion that the RV is worth zero dollars given its defects (DE 77-15 ¶ 21). Mr. Pattee argues his opinion is admissible as a property owner can proffer her lay opinion of her property's value. The Court agrees with Nexus and the motion to strike paragraph 21 is granted.

Property owners are generally entitled to give their opinions regarding the value of their property. *Cunningham v. Masterwear Corp.*, 569 F.3d 673, 675–76 (7th Cir. 2009) (property

owners may testify to the value of their property providing they have some factual basis for their valuation); *see also Bordoni v. Forest River*, 2020 WL 7022485, *4 (N.D. Ind. Nov. 30, 2020) (applying *Cunningham* to allow owner testimony about RV value in breach of warranty case).

Mr. Pattee's opinion, however, is inadmissible as he has not articulated the factual basis for his valuation beyond his ownership status. For example, Mr. Pattee did not indicate he attempted to sell his RV and could not find a buyer. Further, Nexus correctly notes that *Cunningham* limits what property owners may opine on based solely on their status as owners. In particular, a property owner may not testify about the price-lowering effect that various alleged defects had on that property as such appraisal opinions are complex and require expert witnesses. *See Cunningham*, 569 F.3d at 675–76. Therefore, because Mr. Pattee has not explained the factual basis for his valuation, Nexus' motion to strike paragraph 21 will be granted on the merits.

Accordingly, Nexus' motion to strike paragraphs 7, 9, 11, 12, 16 18, and 23 through 29 of Mr. Pattee's declaration is denied and the motion to strike paragraph 21 is granted.

### *(4) The motion to strike portions of Dennis Bailey's declaration and report is denied*

Nexus also motions to strike paragraphs 10, 11, 15 through 22, and 26 through 30 of the declaration by Mr. Pattee's expert witness, Dennis Bailey, and the "relevant portions" of his reports (DE 84).[4] The motion will be denied on the merits for paragraphs 26 through 30. As the

---

[4] Nexus repeatedly refers to the "relevant portions" of Mr. Bailey's reports but does not identify specific sections of the reports by page number or any other indicator. However, Mr. Bailey's declaration does, at points, cite to his report. Accordingly, the Court will only consider Nexus to be challenging the portions of Mr. Bailey's expert report which are cited in the challenged paragraphs of his declaration.

Court did not need to consider any of the other disputed portions of Mr. Bailey's declaration or report in reaching its decision on the motion for summary judgment, the motion to strike paragraphs 10, 11, and 15 through 22 will be denied as moot.

Federal Rule of Evidence 702 governs the admissibility of expert testimony.[5] Under that rule, a witness "who is qualified as an expert by knowledge, skill, experience, training, or education" may offer an opinion if the following criteria are met: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue, (b) the testimony is based on sufficient facts or data, (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702. The district court is required to perform a gatekeeping function before admitting such testimony, to ensure that the admitted testimony or evidence is not only relevant but also reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). The proponent of the testimony bears the burden of establishing by a preponderance of the evidence that the testimony meets each of those elements. *Varlen Corp. v. Liberty Mut. Ins. Co.*, 924 F.3d 456, 459 (7th Cir. 2019). In making this assessment the Court focuses "solely on the principles and methodology, not the conclusions they generate." *Schultz v. Akzo Nobel Paints, LLC*, 721 F.3d 426, 431 (7th Cir. 2013) (quoting *Daubert*, 509 U.S. at 595).

In paragraphs 26 through 30 of his declaration, Mr. Bailey proffers his opinion that the RV is worth $43,000, which is $100,216 less than what Mr. Pattee paid for it, and discusses the

---

[5] The Court notes that Nexus' motion does not mention Rule 702 or *Daubert* a single time in its seven pages. Mr. Pattee's response consequently does not address the motion as expressly raising those issues. Nexus' reply brief, for the first time, frames its challenge as predicated on Rule 702 and *Daubert* and criticizes Mr. Pattee for misconstruing its argument (DE 91 at 1).

methodology he used to reach that valuation (DE 77-16 ¶¶ 26–30).[6] Nexus does not challenge Mr. Bailey's educational and experiential qualifications to be considered an expert, and the Court concludes based on his curriculum vitae that he qualifies as an expert. Nexus raises four objections to Mr. Bailey's valuation opinion: (1) that his methodology relies on no testable metrics and has not been peer reviewed, (2) Mr. Bailey does not provide an itemized subtraction of value based on specific defects, (3) Mr. Bailey's methodology is fundamentally undisclosed, and (4) it is unclear how he applied this methodology to the instant facts. Mr. Pattee replies by arguing Mr. Bailey has a reliable methodology, which is supported by evidence, is approved by peers in the RV community, and does not require specific line-by-line deductions in calculating diminished value damages. The Court agrees with Mr. Pattee. Accordingly, Nexus' motion to strike paragraphs 26 through 30 is denied.

Beginning with Nexus' first objection, Mr. Bailey's declaration itself clearly states that his methodology is consistent with the standards and generally accepted methodology used in the RV appraisal industry and has been peer reviewed by other RV appraisers (DE 77-16 ¶ 29). As Nexus provides no specific argument or evidence contradicting this claim, this declaration is sufficient to satisfy the requirements of Rule 702. *See Bordoni v. Forest River*, 2020 WL 7022485, *5 (N.D. Ind. Nov. 30, 2020) (holding that an uncontested affidavit by Dennis Bailey stating that his methodology was standard in his field and had been peer reviewed within the industry was sufficient to satisfy the Rule 702 requirement for reliability).

The Court would also note that Nexus' objection based on a lack of testable metrics is less than persuasive as such metrics are not categorically required by Rule 702. The Seventh

---

[6] Mr. Bailey included the $499 document fee as part of the purchase price in addition to the $142,717 cost of the unit (DE 77-17 at 36).

Circuit has recognized that "the test for reliability of nonscientific experts is 'flexible.'" *United States v. Romero*, 189 F.3d 576, 584 (7th Cir. 1999) (quoting *Kumho*, 526 U.S. at 150). This means that not all admissible experts can be mechanically scrutinized in the same manner as scientific or technical experts. *Lees v. Carthage Coll.*, 714 F.3d 516, 525 (7th Cir. 2013) (holding the nonscientific expert testimony in the field of premises security is not easily subjected to "rigorous testing and replication"). Rather, the key inquiry in examining an expert qualified by experience is ensuring the experienced appraiser's opinion referenced their explanation of methodology and principles and that the conclusions are not based solely on subjective belief or speculation. *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010).

Turning to the second issue, Nexus does not cite to any legal authority requiring Mr. Bailey to provide itemized deductions in order for his opinion to be admissible. On the contrary, there are several cases from this District allowing an RV appraisal expert to simply present his final valuation after providing an overview of the specific factors he used. *See e.g., Hoopes v. Gulf Stream Coach*, 2016 WL 1165683, *10 (N.D. Ind. Mar. 25, 2016); *Pegg v. Nexus RVs LLC*, 2019 WL 2772444, *6 (N.D. Ind. July 2, 2019).[7] Therefore, the Court does find the declaration and report inadmissible based on this argument.

Regarding the third issue, Nexus' argument that Mr. Bailey's methodology is not disclosed is simply without support in the record. Mr. Bailey's report clearly outlines the twenty-one assessment factors he considered in making his valuation and that he assigned them weight based on his experience and education (DE at 77-17 at 35–36). The report also lists the evidence Mr. Bailey considered in making this assessment and explains his methodology for

---

[7] These cases involved valuation by the instant expert's brother, Tom Bailey, and according to Nexus the brothers utilize the same methodology (DE 90 at 13 n.4). For convenience, the Court will refer to the common methodology as the "Bailey Methodology."

conducting an RV inspection (DE 77-17 at 2–33). Consequently, the Court will not strike based on this argument.

Nexus' fourth argument is that Mr. Bailey's report, by not explaining how each individual assessment factor contributed to his valuation, fails to show how he reliably applied his methodology to this case and consequently renders the lump sum valuation he provided inadmissible.

In order for an expert opinion to be admissible under Rule 702, it is not enough for a methodology to be reliable; rather it must be both reliable and reliably applied to the instant case. Fed. R. Evid. 702(d); *Metavante*, 619 F.3d at 761. In support its fourth argument, Nexus cites to this Court's prior decision in *Castagna v. Newmar Corporation*, where the Court granted a motion to strike an RV valuation by the instant expert's brother for failing to demonstrate how the Bailey Methodology was reliably applied. 2020 WL 525936 (N.D. Ind. Feb. 3, 2020).

However, the Court expressly noted that *Castagna* was factually distinct from other cases where the Bailey Methodology had been admitted such as *Pegg* and *Hoopes* which made their analysis less than persuasive. *Id.* at *4. Specifically, *Castagna* involved an RV being rendered totally unusable after a fire and Mr. Tom Bailey opining that it was only worth scrap value without explaining how he reached that conclusion. *Id.* In contrast, *Hoopes* and *Pegg* more closely resemble the instant case where the damages are based on defects in RV functions or components, such as a slide out, that reduced the RVs' operational capacity but left them somewhat fit for use. *Id.* The Court contemplated that in this later scenario it was easier to assess how the Bailey Methodology was being applied, because Mr. Tom Bailey could use the sales price as a starting point and then draw on his experience to ascertain how those defects impacted the value of the RV. *Id.*

Nexus does not discuss these factual distinctions or otherwise articulate why this case is more similar to *Castagna* than *Hoopes* or *Pegg*. Consequently, the Court will not supply any such argument for them and will treat like cases alike. *Draper*, 664 F.3d at 1114. Mr. Dennis Bailey's report may not provide the level of detail which Nexus desires, but in exhaustively detailing the information he considered in formulating his conclusion (DE 77-17 at 2–26), explaining his investigative method (DE 77-17 at 32–33), and outlining the methodological factors he used to parse that information in valuing the RV (DE 77-17 at 35–36), he has provided sufficient detail to satisfy the requirements of Rule 702. *See Metavante*, 619 F.3d at 761.

Accordingly, the Court concludes that Nexus has not established paragraphs 26 through 30 of Mr. Bailey's declaration, and relevant sections of his report, are inadmissible and the motion to strike will be denied. As the Court did not need to consider any of the other challenged paragraphs or report portions in reaching its decision on the motion for summary judgment, the motion for those sections will be denied as moot.

The Court will now address the motion for summary judgment.

### C.  Standard of Review

Summary judgment is proper when the movant shows that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A "material" fact is one identified by the substantive law as affecting the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A "genuine issue" exists with respect to any material fact when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.  Where a factual record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and

summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *Bank of Ariz. v. Cities Servs. Co.*, 391 U.S. 253, 289 (1968)). In determining whether a genuine issue of material fact exists, this Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in that party's favor. *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008); *King v. Preferred Tech. Grp.*, 166 F.3d 887, 890 (7th Cir. 1999).

### D. Discussion

Mr. Pattee asserts claims for breach of express (Count 1) and implied warranties (Count 2). Mr. Pattee also asserts these warranty claims under the federal Magnuson-Moss Warranty Act (Count 5). Further, he asserts claims for intentional (Count 3) and negligent (Count 4) misrepresentation. Mr. Pattee additionally asserts a claim for unjust enrichment (Count 7).[8] Nexus has moved for summary judgment on all of Mr. Pattee's claims. The Court will partially grant and partially deny this motion.

#### (1) Express Warranty Claim

Under Indiana law, to prevail on a breach of warranty claim, a plaintiff must prove four elements: "(1) the existence of a warranty, (2) a breach, (3) causation, and (4) damages." *Matthews v. REV Recreation Grp., Inc.*, 931 F.3d 619, 622 (7th Cir. 2019) (internal citation omitted).

---

[8] Mr. Pattee voluntary dismissed Count 6 of his complaint, a claim under the Florida Motor Vehicle Repair Act (DE 73).

The parties do not dispute that an express warranty exists. Nor is there a dispute about the theory of causation articulated by Mr. Pattee, that the defects were present when he purchased the RV. Rather, the dispute centers on whether there was a breach of the express warranty and whether Mr. Pattee can establish damages from that alleged breach. The Court concludes that Mr. Pattee has established a breach regarding the slide out defect, he has not established a breach regarding the other defects, and he has established damages. Consequently, the Court will deny the motion on Count 1 as it relates to the slide out defect and grant the motion as it relates to all other defects.

> *(a) Mr. Pattee has established breach regarding the slide out defect but none of the other alleged defects.*

> (i) Nexus had a reasonable opportunity to repair the slide out defect without success, thus Mr. Pattee established the breach element regarding that defect

Under Indiana law, the purchaser must give the warrantor a reasonable opportunity to repair the defects before bringing a breach of warranty claim. *Zylstra v. DRV, LLC*, 8 F.4th 597, 601 (7th Cir. 2021) (citing *Matthews*, 931 F.3d at 622). A "reasonable opportunity" to repair defects constitutes at least three chances for the warrantor to repair the defect. *Id.* at 603 (internal citations omitted).

20

Mr. Pattee has alleged fifteen total defects in his RV.[9] These defects are listed in the following chart. The chart also lists whether Mr. Pattee indicates they are not repaired, and the number of times he claims to have presented them for repair:

| Issue | Number of Repair Attempts Claimed by Mr. Pattee | Whether Mr. Pattee indicates it is now repaired |
|---|---|---|
| 1. Living room slide out malfunctions | Four | No |
| 2. Water leak under bed | Three | Yes |
| 3. Outside radio inoperable | One | Yes |
| 4. Front end pulls to the right | One | Yes |
| 5. Screws and fasteners missing throughout RV | One | Yes |
| 6. Entry door screws are broken off | One | Yes |
| 7. Basement Compartment fills with water | One | Yes |
| 8. Gutter misaligned | One | Yes |
| 9. Slide out roof membrane torn | One | Yes |
| 10. Water damage to flooring | One | Yes |
| 11. Wall panel fell off | Two | No |
| 12. Hole in roof fiberglass from satellite dish | One | No |
| 13. Rear air conditioner doesn't cool | Two | Yes |
| 14. Decals are peeling | Two | No |
| 15. Screen door is loose | One | Yes |

(DE 76 at 3–4).

The Court notes that among the fifteen purported defects in the RV, Mr. Pattee only alleges that four of those issues were never fully repaired (DE 76 at 4). Therefore, the Court can

---

[9] Nexus' filings refer to sixteen defects, but from Mr. Pattee's filing he does not seem to be alleging the issue with the water heater not functioning is a problem supporting his claims (*Compare* DE 82 at 1–2 *with* DE 76 at 3). In the alternative, if Mr. Pattee were to claim the water heater defect supports his claim, the Court would grant summary judgment on that defect as the record does not indicate he presented that issue to Nexus for repair (DE 76 at 4).

narrow its analysis to whether there was a reasonable opportunity for repair of these four remaining alleged defects: (1) the living room slide out malfunction, (2) the wall panel falling off, (3) a hole in the fiberglass roof from the satellite dish, and (4) peeling decals.[10]

Of these four defects, all except the slide out have been presented to Nexus for repair two times or less according to Mr. Pattee (DE 76 at 4). Thus, as a matter of law, Nexus has not had a reasonable opportunity to perform repairs on these defects and they cannot sustain a breach claim. *Zylstra*, 8 F.4th at 603 (citing to *Matthews*, 931 F.3d at 622). Accordingly, the Court's analysis is further narrowed to the living room slide out defect.

The parties dispute the number of times when the living room slide out defect was presented to Nexus for repair. Mr. Pattee alleges he presented the defect four times and Nexus argues it has only been presented two times (DE 76 at 3–4; DE 82 at 5).[11] The parties agree that the slide room was subject to repair at least twice, once at Nexus' facility in October 2017 and again at Open Road in March 2018. Nexus argues that the repairs undertaken at Southern Komfort in 2017, while involving the slide room, should not count as those repairs did not address the slide out's functioning but merely involved adding caulk to the corners of the unit (DE 82 at 5). Nexus argues that the repairs at its facility in June 2018 relating to the slide out were merely goodwill work to reduce movement and noise and should not be counted as they did not address the alignment of the unit (DE 82 at 5).

---

[10] The Court recognizes Mr. Pattee's alternative argument that none of the defects being repaired within a reasonable time constitutes breach and will write separately on this contention later in this order. Likewise, the Court will also address Mr. Pattee's arguments some of these defects constitute "major defects" which are entitled to less than three repair attempts later in this order.

[11] The Court notes that Nexus' original memorandum in support of the motion for summary judgment raises the possibility the slide unit may have been serviced a third time (DE 72 at 10) but will consider the arguments in its Reply to be controlling.

The dispute over whether the slide room was repaired two or four times constitutes a genuine dispute of material fact, which makes summary judgment inappropriate. The fact is material as whether the RV was presented for repair only two times or more than two times is dispositive to the outcome of Mr. Pattee's suit. *See Anderson*, 477 U.S. at 248; *Zylstra*, 8 F.4th at 603. The evidence in the record would allow a reasonable jury to conclude the RV had been presented to Nexus for repair at least three times without being fixed.

Specifically, regarding the June 2018 work at the Nexus facility, Nexus' own documentation for that visit notes Mr. Pattee complained that the slide room "is crooked" and the subsequent work performed on the unit involved adjusting the slide out mechanism by adding rollers and plates (DE 77-11 at 3–4). Further, the document seems to label all the individual repair jobs as performed under warranty, as opposed to the goodwill work Nexus claims (DE 77-11 at 3–4). Reviewed in the light most favorable to Mr. Pattee, this evidence indicates the issue of the slide room's alignment was raised by Mr. Pattee on this visit and addressed by Nexus. Therefore, for purposes of summary judgment, this visit will qualify as Nexus' third attempt to repair the slide out. As only three attempts are needed, the Court does not need to analyze whether the evidence would support a reasonable jury finding the Southern Komfort work qualifies as a repair opportunity.

As Nexus has had at least three attempts to repair the slide out and it is still allegedly broken, Nexus has had a reasonable opportunity to repair the alleged defect. Accordingly, Mr. Pattee has sufficiently established the breach element of his express warranty claim with regard to the slide out defect and the Court will now turn to the alternate theories of breach for the remaining defects.

(ii) The Court need not address whether any alleged defects are "major defects"

Mr. Pattee also argues that under the Seventh Circuit's decision in *Zylstra*, Nexus could be entitled to less than three attempts at repairing some defects before causing a breach because those defects constitute "major defects" which made his RV unusable (DE 76 at 8). Specifically, he argues that the slide out, bedroom flooding, and wall panel falling off defects each constitute a major defect (DE 76 at 8).

In *Zylstra*, however, the court expressly reserved judgment as to whether a manufacturer was entitled to at least three repair attempts when the defect at issue was a "major defect that made the RV unusable in any manner" as they did not need to reach the issue to decide the case. 8 F.4th at 602. The court then reaffirmed its prior holding that a reasonable opportunity constitutes at least three repair attempts. *Id.* at 603. Accordingly, this Court has no occasion to determine whether any of the defects presented by Mr. Pattee qualify as major defects.

The Court will now turn to whether the defect is covered by the express warranty and whether Mr. Pattee can establish damages.


(iii) Whether the slide out defect is a design flaw excluded from the Limited Warranty is a material dispute of fact, thus summary judgment is inappropriate

Nexus also argues it is entitled to summary judgment as the slide room defect is not a defect covered by the Limited Warranty. Nexus argues that the Limited Warranty agreement only covers defects in materials or workmanship (DE 72 at 12–13). Nexus further argues that any defect involving slide room movement constitutes a design defect, which is therefore excluded from coverage under the Warranty and cannot sustain Mr. Pattee's breach claim (DE 72 at 13). Mr. Pattee disputes this characterization and alleges that the slide room defect is a result of

Nexus' defective materials or workmanship as supported by the conclusions of his expert witness Mr. Bailey (DE 76 at 10).[12]

Whether the slide room defect constitutes a design defect or a material and workmanship defect is a genuine dispute of material fact which makes summary judgment inappropriate. It is a factual question as to whether the alleged defect is caused by the design of the unit or by Nexus' materials and workmanship. Likewise, it is material as the determination of that fact is dispositive to Mr. Pattee's claim. Accordingly, Nexus' motion for summary judgment on this basis will be denied.

(iv) Mr. Pattee has not established a breach claim based on the length of time the repairs took

The reasonable opportunity for repair requirement has been interpreted to require repairs to be completed within a reasonable amount of time as well as a reasonable number of attempts. *See Pegg v. Nexus RVs LLC*, 2019 WL 2772444, *7 (N.D. Ind. July 2, 2019); *see also Zylstra*, 8 F.4th at 602 (considering the number of days out of service in the reasonable opportunity analysis). Mr. Pattee argues that none of the fifteen alleged defects, even those ultimately repaired, were repaired within a reasonable amount of time and therefore Nexus committed a breach (DE 76 at 3). Specifically, Mr. Pattee argues that his RV was out of service for a total of 116 days on four occasions for repairs (DE 76 at 3). Nexus in turn argues that the RV was out of service for less than 10 days on those four occasions (DE 82 at 7). Mr. Pattee's calculation is simply counting the number of calendar days the RV was out of Mr. Pattee's possession for each

---

[12] Several unchallenged paragraphs of Mr. Bailey's expert declaration conclude this defect is of materials and workmanship (*See e.g.,* DE 77-16 ¶¶ 9, 13). This is sufficient supporting evidence to create a genuine dispute of material fact.

service visit (DE 76 at 3–4; DE 72-2 at 132:2–11). In contrast, Nexus based their calculation on the service reports' indications of how many hours each repair shop actively spent working on the RV (DE 82 at 7; DE 77-7, 9, 11).[13]

In *Zylstra*, the Seventh Circuit noted that properly calculating time out of service for an RV is often a complicated task and declined to create a bright line rule for how long is considered unreasonable. *Zylstra*, 8 F.4th at 606–07. In determining this time, at least for purposes of summary judgment, the court's analysis focused on counting the days in which the RV was out of the owner's possession and in the repair shop for warranty claim related repairs. *Id.* at 607–09. The court excluded several time periods the plaintiffs attempted to include such as when the RV received unrequested fine tuning while awaiting pickup after purchase, as well as time where the plaintiffs brought the RV to the manufacturer for a non-warranty repair appointment and then requested warranty repairs. *Id.* at 607–08. The court ultimately held that, given the facts in that case, a plaintiff's RV being out of service for 153 days while undergoing warranty related repairs did not constitute an unreasonably long period. *Id.* at 607–09.

Applying *Zylstra* to the instant facts, the Court concludes Mr. Pattee's RV was not out of service for an unreasonably long time which would amount to breach of warranty. To begin, even if the Court unconditionally accepted Mr. Pattee's estimate of 116 days out of service, that is still 37 days shorter than the period found to be reasonable in *Zylstra*. While *Zylstra* did not create a bright line rule regarding this amount of time, the facts of this case are sufficiently similar to those in *Zylstra* for this time period to serve as a benchmark for the Court's analysis. In particular, both cases involve a dispute between the RV owner over several, often recurring,

---

[13] Nexus does not proffer a legal basis for calculating with this method. Further, it seems wholly untethered from the 7th Circuit's analysis in *Zylstra* which clearly considers "days" out of service. 8 F.4th at 606–09.

issues with the RV and numerous visits to repair shops within the first year of ownership for a litany of issues. *See id.* at 509–601.

Further, this is likely an overestimate. The district court in *Zylstra* noted that time when an RV was undergoing both warranty and non-warranty service should be discounted from the reasonable time calculus given the key consideration is the time only for warranty related repairs. *Zylstra*, 2020 WL 2526491, *8 (N.D. Ind. 2020); *see also Zylstra*, 8 F.4th 597 at 607 (noting as a matter of law, the time non-warranty claims are being addressed does not count as time out of service). In this case, Mr. Pattee concedes at least one alleged defect, the RV's front end pulling to the right, is not covered by the warranty and therefore the time spent resolving that issue would not count for this analysis (DE 76 at 3–4).

Ultimately, it is not necessary to conduct an itemized analysis of what defects count as warranty related repairs given that Mr. Pattee's own estimate is noticeably shorter than what the Seventh Circuit has previously indicated is a reasonable amount of time for an RV to be out of service. Accordingly, Mr. Pattee has not established a breach of warranty based upon any alleged defect not being repaired within a reasonable amount of time.

### (b) Mr. Pattee has established damages

Nexus argues that Mr. Pattee is unable to prove any damages from the alleged breach, and therefore it is entitled to summary judgment. Specifically, Nexus argues that Mr. Pattee can only establish damages through a "reliable expert opinion" and because expert witness Mr. Bailey's damages estimates are inadmissible, Mr. Pattee has failed to establish damages claims

which can survive summary judgment (DE 72 at 14–15).[14] Mr. Pattee argues that Mr. Bailey's valuation is admissible and, in the alternative, his own valuation opinion is sufficient to establish damages.

It is well settled that a plaintiff must prove damages as an element of their claim. *Schroeder v. Barth, Inc.*, 969 F.3d 421, 424 (7th Cir. 1992). When a plaintiff cannot establish damages with "with sufficient certainty to avoid speculation or conjecture by the jury, the defendant is entitled to judgment as a matter of law." *Shepard v. State Auto Mut. Ins. Co.*, 463 F.3d 742, 748 (7th Cir. 2006) (internal citations omitted).

The standard, but not exclusive, measure for damages for breach of warranty is "the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount." Ind. Code § 26-1-2-714(2); Comment to Ind. Code § 26-1-2-714(2). Mr. Pattee has stated he is seeking these diminished value damages from his express warranty claim and that Mr. Bailey's report provides sufficient evidence of the damages for his claims to proceed (DE 76 at 13–16).

For the reasons previously stated in discussing the motions to strike Mr. Pattee's and Mr. Bailey's declarations, Mr. Bailey's valuation opinion is admissible. Therefore Mr. Pattee has established evidence of damages sufficient for his claim to survive summary judgment. Accordingly, the Court will deny Nexus' motion for summary judgment on Count 1 as it relates to the slide out defect and grant the motion as it relates to all other alleged defects.

---

[14] It appears the parties do not dispute that the Limited Warranty precludes recovery of incidental and consequential damages under the express warranty claim (*Compare* DE 76 at 16–17 *with* DE 82 at 11).

### *(2) Implied Warranty Claim*

Count 2 of Mr. Pattee's complaint alleges that Nexus breached the implied warranty of merchantability as it sold him an RV which was not fit for its ordinary purpose.

Under Indiana law, there is an implied warranty of merchantability in a contract for the sale of goods if the merchant is a seller of those goods, unless excluded or modified by a contract. Ind. Code § 26-1-2-314(1). Further, an action for breach of this warranty must be commenced within four years after the cause of action has accrued, but the parties may limit that duration to a period of no less than one year. Ind. Code § 26-1-2-725(1). A plaintiff must prove the same four elements as required for an express warranty claim to prove an implied warranty claim: (1) the existence of a warranty, (2) a breach, (3) causation, and (4) damages. *Matthews*, 931 F.3d at 622; *Frantz v. Cantrell*, 711 N.E.2d 856, 860 (Ind. 1999). Likewise, the purchaser must give the warrantor a reasonable opportunity, of at least three attempts, to repair the defects before bringing a breach action. *Zylstra*, 8 F.4th at 601–03.

Nexus argues there was no breach of this warranty for the same reasons it argued there was no breach of the express warranty, namely that Mr. Pattee did not have any complaints within the warranty period which required more than three repair attempts.  Further, Nexus argues that the Limited Warranty agreement it executed with Mr. Pattee limited this implied warranty to the scope and duration of the Limited Warranty.  The Court will begin with the Limited Warranty issue and then discuss the elements of implied warranty in turn.

> (a) Whether Nexus limited the terms or scope of the implied warranty is a triable issue which precludes summary judgment.

First is the issue of whether the Limited Warranty agreement limited the scope of the implied warranty. Federal law permits a written warranty to limit the duration of an implied warranty but requires that limitation be "set forth in clear and unmistakable language and prominently displayed on the face of the warranty." 15 U.S.C. § 2308(b). This provision applies to both claims under the Magnuson-Moss Act and to claims under state law. *Id.* § 2308(c); *see also* Ind. Code § 26-1-2-316(2). Mr. Pattee argues that Nexus' attempt to limit the duration of the implied warranty is unenforceable as the language in the Limited Warranty agreement is, in the words of another Judge in this District, "vague" and "non-sensical." (DE 76 at 13 (quoting *Smith v. Nexus RVs LLC*, 468 F.Supp.3d 1012, 1024–25 (N.D. Ind. 2020)).

The relevant disclaimer contained in the Nexus Limited Warranty reads as follows: "**To the extent that applicable state and/or federal law prohibits the exclusion of any remedy permitted under [law], any such remedy ... is limited *to one (1), but not limited to,* any implied WARRANTY OF MERCHANTABILITY or FITNESS for a particular purpose.**" (DE 77-6) (italics added). The Court concurs with our colleagues' assessment on the clarity of this Warranty. *Smith*, 468 F.Supp.3d at 1025; *see also Pegg v. Nexus RVs LLC*, 2019 WL 2772444, *10 (N.D. Ind. July 2, 2019) (agreeing that this Limited Warranty agreement is "a bit confusing"). The Warranty would appear to be missing two terms—a duration and thereafter appropriate qualifying language—which contribute to the confusing nature of the passage. It is beyond this Court's duties to supply these terms. *See B&R Oil Co., Inc. v. Stoler*, 77 N.E.3d 823, 829 (Ind. Ct. App. 2017). Consequently, this creates a triable issue as to whether Nexus limited the Warranty's scope or duration which makes summary judgment inappropriate.

*(b) Mr. Pattee has established breach regarding his implied warranty claim*

The alleged breaches and whether they required more than three repair attempts to fix are discussed extensively in the prior section of this opinion and the Court need not restate that analysis here. Suffice to say, the slide room is an alleged defect which was not repaired in three attempts or less and constitutes a basis for this breach claim. Mr. Pattee alleges this defect was present at the time of purchase and rendered his RV unmerchantable. In the absence of any additional argument on this point from Nexus, the Court will accept Mr. Pattee's claim and conclude he has established a breach of implied warranty claim regarding the slide out defect sufficient to survive summary judgment. However, for the reasons previously discussed, none of the claims involving other defects have been sufficiently established and summary judgment will be granted on those claims.

As Nexus has not disputed any other elements of the implied warranty claim, the Court will not raise them on its behalf.[15] Accordingly, Nexus' motion for summary judgment on Count 2 will be denied as it relates to the slide out defect but granted as it relates to every other defect.

### *(3) Magnuson-Moss Warranty Act Claims*

Count 5 of the complaint alleges breaches of express and implied warranty under the federal Magnuson-Moss Warranty Act. The Magnuson-Moss Act "does not provide an independent basis for liability, rather it only provides for federal jurisdiction for some state claims." *Priebe v. Autobarn, Ltd.*, 240 F.3d 584, 587 (7th Cir. 2001). A claim under the

---

[15] The Court notes that the parties seem to agree that incidental and consequential damages can be recovered from the implied warranty claim (*Compare* DE 76 at 16–17 *with* DE 82 at 11).

31

Magnuson-Moss Act rises and falls with the underlying state law claim. *Id.* As set forth above, the Court partially grants and partially denies Nexus' motion regarding the express warranty claim and the implied warranty claim. Accordingly, Nexus' motion for summary judgment on Count 5 is partially denied and partially granted. It is denied with respect to all claims under Count 5 derived from the slide out defect in Counts 1 and 2, and it is granted with respect to the claims derived from all other defects. Therefore, the Magnuson-Moss express and implied warranty claims relating to the slide out will proceed.

### *(4) Intentional and Negligent Misrepresentation*

Nexus next moves for summary judgment on Mr. Pattee's intentional (Count 3) and negligent (Count 4) misrepresentation claims.[16]  Nexus argues that these claims are barred as duplicative of Mr. Pattee's breach claims in Counts 1 and 2, that the negligent misrepresentation claim is additionally barred under Indiana's economic loss doctrine, and that both claims also cannot survive summary judgment due to a lack of evidence (DE 72 at 16–18).  Mr. Pattee argues in turn that these claims constitute a separate and independent tort of fraud with distinct injuries from his breach claims, that his case qualifies for an exception to the economic loss doctrine, and that there is sufficient evidence for his claims to survive summary judgment (DE 76 at 18–23).[17]  For the following reasons the Court finds Mr. Pattee's misrepresentation claims

---

[16] Mr. Pattee's reply brief clarifies these claims are Indiana common law fraud claims using the alternative mental states of knowledge (intentional) and reckless indifference (negligence) (DE 76 at 18–19). For consistency with the parties' briefs, the Court will also refer to these fraud claims as "misrepresentation."

[17] The Court notes that claims of fraud are subject to a higher pleading standard. Fed. R. Civ. P. 9(b). The Court concludes Mr. Pattee has described the circumstances constituting fraud with sufficient particularity to satisfy this rule and his general allegations of intent or knowledge are likewise sufficient.

are barred as they are duplicative of his breach claims and the negligent misrepresentation claim

is also barred by the economic loss doctrine.

> *(a) Mr. Pattee's misrepresentation claims are barred as they are duplicative of his breach claims*

Mr. Pattee's misrepresentation claims are duplicative of his breach claims outlined in

Counts 1 and 2 of the complaint and are therefore barred. Under Indiana law, a party generally

cannot repackage its breach claim as a tort claim in order to obtain additional damages. *Bayview*

*Loan Servicing, LLC, v. Golden Foods, Inc.*, 59 N.E.2d 1056, 1068 (Ind. Ct. App. 2016) (internal

citations omitted). As this Court has previously explained "a fraud claim is really a repackaged

breach claim where it amounts 'to a series of misrepresentations stemming from and about the

contract itself.'" *Truitt v. Forest River, Inc.*, 2021 WL 4061591, *11 (N.D. Ind. Sept. 7, 2021)

(quoting *Tobin v. Ruman*, 819 N.E.2d 78, 86 (Ind. Ct. App. 2004)). However, there is an

exception allowing access to a tort remedy when "the plaintiff's interests have been invaded

beyond a mere failure to fulfill contractual obligations". *Bayview*, 59 N.E.2d at 1069. This rule

does not preclude a party from bringing a tort action for fraud simultaneously with a breach

action, so long as the plaintiff can establish the breaching party committed the "separate and

independent tort of fraud" against them, and that the fraud resulted in distinct damages from the

breach claim. *Tobin*, 819 N.E.2d at 86.

The Court concludes Mr. Pattee's clams of fraud are barred by this rule. Mr. Pattee

proposes fraud based on a single alleged misrepresentation in October 2017 after his RV was

returned to him after factory repairs (DE 76 at 19).  The alleged misrepresentation was a

statement by Nexus service technician Connie Spratt indicating that Nexus had corrected all the

problems with his RV, including any with the slide out, and that everything had been checked out and was okay (DE 76 at 19). Mr. Pattee argues his contractual relationship with Nexus "morphed" into the tort of fraud and he may bring a fraud claim as Nexus' actions through its employee satisfy the individual elements of fraud and he suffered distinct damages as a result of the fraud (DE 76 at 20–21). Specifically, the inability to utilize reservations and tickets he had already purchased for use with his RV and the continued payments on a defective vehicle (DE 76 at 20–21).

The Court is not persuaded by this argument. The alleged misrepresentation in this case clearly stems from Mr. Pattee's contract with Nexus as it involves whether Nexus fulfilled a contractual promise, namely whether the slide out had been repaired pursuant to the Limited Warranty (DE 76 at 19-20). Even if Nexus failed to satisfy its contractual obligations and then lied to Mr. Pattee about their failure, that is not sufficient to establish the separate and independent tort of fraud. *Tobin*, 819 N.E.2d at 86 (concluding that evidence which "at best" established a breach of contract and then lying about that breach was insufficient to constitute fraud). Further, Mr. Pattee's proposed fraud injury of economic losses due to not having his RV available after a failed warranty repair is not distinct from his breach injury. Both injuries stem directly from his inability to use the RV fully due to Nexus not repairing the vehicle per the warranty contract. Therefore, Mr. Pattee has not established Nexus committed the separate and independent tort of fraud against him.

As the alleged misrepresentation stems from the warranty contract itself, Mr. Pattee's proposed tort of fraud, either intentional or negligent, is duplicative of his breach claims. Accordingly, the Court will grant Nexus' motion for summary judgment on Counts 3 and 4 of the complaint.

       *(b) Mr. Pattee's negligent misrepresentation claim is also barred by the economic*

*loss doctrine*

Additionally, Mr. Pattee's negligent misrepresentation claim is also barred by the Indiana

courts' economic loss doctrine. This doctrine holds that when a contract exists between the

defendant and the plaintiff, the defendant is "not liable under a tort theory for any purely

economic loss causes by its negligence (including, in the case of a defective product or service,

damage to the product or service itself) …." *Indianapolis-Marion Cty. Pub. Libr. v. Charlier*

*Clark & Linard, P.C.*, 929 N.E.2d 722, 729 (Ind. 2010). The Indiana Supreme Court has

acknowledged there are exceptions to this doctrine, and there may be further exceptions to be

delineated based upon several factors. *See Indianapolis-Marion Cty. Pub. Libr.*, 929 N.E.2d at

736 (listing several exceptions including lawyer malpractice); *U.S. Bank v. Integrity Land Title*

*Corp.*, 929 N.E.2d 742, 748–49 (Ind. 2010) (listing the factors the court considered in

determining an exception should be created).

Mr. Pattee does not argue that a currently delineated exception to the rule applies in his

case, rather he argues that the Court should establish one based on the circumstances of his case

(DE 76 at 23).[18] However, the legal analysis in support of this argument is threadbare. Mr. Pattee

quotes the extensive list of factors enumerated by the Indiana Supreme Court in *U.S. Bank* but

does not attempt to meaningfully apply them to his case (DE 76 at 22–23). Rather, Mr. Pattee

simply indicates his case is distinct from *Indianapolis-Marion Cty. Pub. Libr.* because that case

---

[18] The Court notes that the *Indianapolis-Marion Cty. Pub. Libr.* list of exceptions includes "negligent misrepresentation." 929 N.E.2d at 741.  However, the tort of negligent misrepresentation being referred to is recognized in Indiana only in very limited employment cases and is not applicable to the instant facts.  *See Greg Allen Const. Co., v. Estelle*, 798 N.E.2d 171, 174 (Ind. 2003); *see also Mart v. Forest River, Inc.*, 854 F.Supp.2d 577, 595–96 (N.D. Ind. 2012).

involved a construction contract while his case involves a consumer and RV manufacturer with the RV manufacturer having "expertise in the manufacture and repair fo [*sic*] RVs" (DE 76 at 23). While "superiority of the actor's knowledge or expertise" is one relevant factor for consideration, it is featured on a list of over a dozen and none of the rest are mentioned or analyzed by Mr. Pattee.  *See U.S. Bank*, 929 N.E.2d at 748-49 (listing the factors to be considered). Given this lack of analysis, the Court does not find that Mr. Pattee has established his circumstances fit into, or merit the creation of, an exception to the general economic loss rule. *Draper*, 664 F.3d at 1114 (internal citation omitted).

Accordingly, the Court finds the economic loss doctrine bars Count 4 of Mr. Pattee's complaint and would alternatively grant Nexus' motion for summary judgment on this basis.

*(c) The Court does not need to reach the issue of whether there is sufficient evidence for the claims to survive summary judgment*

As the Court has found Mr. Pattee's misrepresentation claims are barred as duplicative and by the economic loss doctrine, it need not decide whether there would be sufficient evidence for them to survive summary judgment.

*(5) Unjust Enrichment*

Nexus moves for summary judgment on Count 7, Mr. Pattee's unjust enrichment claim, arguing the valid contract between itself and Mr. Pattee precludes an unjust enrichment claim under Indiana law (DE 72 at 18). Mr. Pattee does not dispute that generally a valid express contract precludes an unjust enrichment claim, but instead argues that his case falls under an exception to this rule. Namely that even when there is a valid contract between the parties, a

court may impose an equitable remedy when the express contract does not fully address a subject and imposition of that remedy would further the ends of justice (DE 76 at 23–24).

The Court concludes Mr. Pattee's circumstances do not qualify for this exception and therefore his unjust enrichment claim is barred. The general rule articulated by the Indiana Supreme Court is simply that "[w]hen the rights of parties are controlled by an express contract, recovery cannot be based on a theory implied in law." *Zoeller v. E. Chicago Second Century, Inc.*, 904 N.E.2d 213, 221 (Ind. 2009) (quoting *Keystone Carbon Co. v. Black*, 599 N.E.2d 213, 216 (Ind. Ct. App. 1992) (internal citations omitted)). However, there are exceptions to this general rule. One such exception is that when a contract does not fully address a subject, courts retain the ability to impose an equitable remedy. *Kohl's Indiana, L.P. v. Owens*, 979 N.E.2d 159, 168 (Ind. Ct. App. 2011) (citing to *Coppolillo v. Cort*, 947 N.E.2d 994, 998 (Ind. Ct. App. 2011)).

Mr. Pattee argues that his case falls within this exception and thus the Court is empowered to craft him an equitable remedy. Specifically, he argues that neither the purchase contract nor the warranty he signed with Nexus address his remedies in the instance Nexus "fails or is otherwise unable to repair or replace defective parts or components during the term of the warranty as promised" (DE 76 at 23). The issue of a party not honoring its contractual obligations is indeed a serious one, but fortunately for Mr. Pattee the existence of an express contract provides him the remedy at law of a breach of contract claim. *Coppolillio*, 947 N.E.2d at 998. As Mr. Pattee already possesses a legal remedy for the potential failure of Nexus to honor its contract, there is no need for the Court to craft an equitable remedy.

Further, the Court will note that the circumstances of *Coppolillo* vary considerably from Mr. Pattee's. The contracting parties in *Coppolillo* crafted an agreement to exchange 100 shares of

stock for $100,000 but their express contract only noted an exchange of those shares in exchange for $50,000.  *Coppolillo*, 947 N.E.2d at 998. The parties agreed that the remaining $50,000 would be paid in monthly payments without committing the terms of the monthly payments to their express contract. *Id*. Therefore, the contract between the parties did not fully encompass their payment arrangements and the court found the exception applied. Here there is no allegation or evidence of such an ancillary agreement between Mr. Pattee and Nexus that was not reflected in their express contracts. Accordingly, Mr. Pattee's situation does not fall within the exception and the Court will grant Nexus' motion for summary judgment with regard to Mr. Pattee's unjust enrichment claim.

### E.  Conclusion

For these reasons, the plaintiff's motion to strike paragraphs 3 and 4 of Claude Donati's declaration (DE 79) is DENIED as moot. The defendant's motion to strike portions of John Pattee's (DE 83) declaration is DENIED for paragraphs 7, 9, 11, 12, 16, 18, 20, and 23 through 29 and GRANTED for paragraph 21. The defendant's motion to strike portions of Dennis Bailey's declaration and corresponding portions of his report (DE 84) is DENIED.

Nexus' motion for summary judgment (DE 71) is GRANTED in part and DENIED in part. The motion is GRANTED for Counts 3, 4, and 7 and those counts are DISMISSED in their entirety. The motion is DENIED for the claims in Count 1 and Count 2 derived from the slide out defect. The motion is GRANTED for the claims in Count 1 and 2 derived from any defect besides the slide out, and those claims are DISMISSED. The motion is DENIED for the claims in Count 5 derived from the slide out defect. The motion is GRANTED for the claims in Count 5

derived from any defect other than the slide out defect, and those claims are DISMISSED.

Accordingly, Counts 1, 2, and 5 will proceed solely on the claims related to the slide out defect.

      SO ORDERED.

      ENTERED: March 21, 2022

_____/s/ JON E. DEGUILIO_____
Chief Judge
United States District Court
